UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANNY WHITE, | ) | |
|    *Plaintiff*, | ) | |
| | ) | |
|   *vs*. | ) | 1:12-cv-00133-JMS-DML |
| | ) | |
| ADAM C. NOVAK and the | ) | |
| CITY OF INDIANAPOLIS, | ) | |
|    *Defendants*. | ) | |

## ORDER

Presently pending before the Court is Defendant the City of Indianapolis' ("the City") Motion for Partial Summary Judgment. [Dkt. 38.] The City requests that the Court enter judgment in its favor regarding Plaintiff Danny White's negligence claim, [*id.* at 1], listed as Count Four of his January 4, 2012 Complaint. [Dkt. 1-1 at 17, ¶¶ 23-26.] For the reasons that follow, the Court grants the City's motion.

## I.
### STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). "The applicable substantive law will dictate which

facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir.1996) (citing *Anderson*, 477 U.S. at 248).

## II.
### BACKGROUND

Mr. White has not opposed the City's motion for partial summary judgment. The consequence of his failure to do so is that he has conceded the City's version of the facts. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

Mr. White was arrested at approximately 5:00 AM on March 8, 2011. Prior to the incident giving rise to his arrest, Mr. White had been celebrating his birthday by "drinking at the bars." [Dkt. 39-1 at 14.] While at several bars, Mr. White says he consumed approximately five beers and between five and seven shots of tequila. [*Id.* at 15-16.] At approximately 4:00 AM on the morning of March 8, 2011, Mr. White left the East Winds Bar on foot. [*Id.* at 16.] Mr. White was intoxicated. [*Id.* at 26.]

Plaintiff walked toward his truck to "take another shot" of tequila, but came across an acquaintance of his, "Big R," before reaching where he parked. [*Id*. at 16-17.] "Big R" was attempting to climb a ladder placed against a warehouse on Beecher Street, and asked Mr. White to hold the ladder steady. [Id. at 17-18]. Mr. White complied with this request, and proceeded to watch "Big R" ascend the ladder and cut copper wire from the warehouse. [*Id.* at 18.]

At approximately 5:04 AM, an Indianapolis citizen called the police and reported that two men had a ladder and were removing something from a building. [Dkt. 39-3 at 3.] The 911

dispatcher sent Indianapolis Metropolitan Police Department ("IMPD") Officer Zach Mauer ("Officer Mauer") to 628 East Beecher Street to investigate the suspicious persons report. [Dkt. 39-4 at 5.]

When Officer Mauer arrived on scene in his uniform and fully marked police vehicle, he saw the two men run from the scene. [*Id.* at 6-7.] Officer Mauer opened his car door and yelled "stop, police." [*Id.* at 11.] At that point, Officer Mauer believed he had probable cause to arrest the suspects for felony theft and resisting law enforcement through flight. [Dkt. 39-5 at 11, 13.] Officer Mauer and other IMPD officers set up a perimeter in the area. [*Id.* at 7.] After hearing Officer Mauer indicate over his radio that he had fleeing suspects, IMPD Officer Adam Novak ("Officer Novak"), and his canine partner, Viky, responded to the scene to assist. [*Id.*]

Mr. White stated that when Big R spotted Office Mauer's police vehicle, he yelled "the cops" and began running north on Orleans Street. [Dkt. 39-1 at 19.] According to Mr. White, he stayed in his location momentarily while he watched "the cop chase 'Big R.'" [*Id.*] In an effort to avoid being arrested, Mr. White then ran north between two houses, and stopped in someone's backyard. [*Id.* at 20.] Mr. White then ran west approximately ten to fifteen yards down an alley. [*Id.* at 20-21.] Mr. White next turned on Singleton Street and looked for a place to hide. [*Id.* at 21.] He continued running until reaching 1863 Singleton Street, where he stated that he tripped on an embankment in front of a house and fell, knocking himself out. [*Id.* at 21, 23, 25; dkt. 39-2 at 7.] Mr. White arose from his fall feeling "woozy," continued looking for a place to hide, and lay down on the North side of the house in a three-foot space between the house and the neighbor's privacy fence. [Dkts. 39-1 at 25-26; dkt. 39-2 at 9.] There were no overhead lights on the house and, according to Mr. White, he lost consciousness after laying down in his hiding place. [Dkt. 39-1 at 26, 29.]

When Officer Novak arrived on scene, he spoke with Officer Mauer and Canine IMPD Officer Zach Taylor ("Officer Taylor") to determine the suspects' descriptions, where they were last seen, and whether they were going to be outright arrested. [Dkt. 39-5 at 10-11, 14-15.] Officer Mauer told Officer Novak where he last saw Mr. White, and that he had probable cause to arrest Mr. White for theft and resisting law enforcement. [*Id.* at 11, 13.] Officer Novak shouted announcements for the suspects to surrender three times in English and three times in Spanish. [*Id.* at 18-19.] Officer Novak then released his canine partner, Viky, and together with Officer Taylor and Officer Greg Stewart, started searching for Mr. White and Big R. [*Id.* at 19-20.] Approximately five to ten minutes later, Officer Novak, with Viky on lead, walked North on Singleton Street. [*Id.* at 24.] As they approached the house located at 1863 Singleton Street, Officer Novak noticed strong behavioral changes in Viky, indicating the likely presence of a subject. [*Id.* at 24-25.] Officer Novak then neared a corner of the house, peaked around it, and saw the silhouette of a man in the dark lying in the small space between the house and the privacy fence. [*Id.* at 34-35.] At that point, Officer Novak was confident he was close to the suspect. [*Id.*]

According to Mr. White, when he awoke, Officer Novak and two other police officers were standing a few feet in front of him. [Dkt. 39-1 at 30.] Mr. White alleges that Viky had his arm in a "very soft bite," the officers had their pistols or Tasers drawn, and that Officer Novak proceeded to ask him what happened. [*Id.* at 30-32.] Mr. White answered Officer Novak's question, stating that he had tripped and knocked himself out. [*Id.* at 30.] Mr. White alleges that Officer Novak then dropped the canine's leash, and Viky bit down harder on his arm, causing Mr. White to pass out. [*Id.* at 32.]

Mr. White stated that when he awoke, he had been pulled from the three-foot space in which he had been hiding, into the front yard of the house, and was not handcuffed. [*Id.* at 34-35.] Officer Novak was also standing in front of the house, away from Mr. White, and Viky was sitting between the two, unsecured by Officer Novak. [*Id.* at 37.]

Mr. White, who was still not handcuffed, says that he then moved to sit on his buttocks, and when he did so, Officer Novak said to him three times, "lay down, you son of a bitch, lay down." [*Id.* at 37-38.] Mr. White alleges that upon the third repetition, Viky automatically ran towards him and bit his left arm again. [*Id.* at 38.] Mr. White passed out again and when he woke up, he was still not handcuffed. [*Id.* at 38-39.] Mr. White says that, when he woke up, Officer Novak again told him three times to "lay down, you son of a bitch, lay down." [*Id.* at 38.] Once again, according to Mr. White, upon the third command by Officer Novak, Viky automatically ran towards Mr. White and bit his left arm. [*Id.* at 38, 40.]

When Mr. White woke the final time, Officer Novak handcuffed him and allegedly told him that he was likely going to lose his arm. [*Id.* at 39.] Mr. White suffered a severe injury to his left arm as a result of the canine apprehension. [*Id.* at 6-7.] He also alleges to have sustained a broken hip as a result of the incident, but does not recall the injury occurring nor did he complain about it at the hospital. [*Id.* at 10.]

Pursuant to IMPD policy, Officer Novak requested a Canine Supervisor to the scene to investigate the matter and complete a K9 Supervisory Review Report. [Dkt. 39-5 at 42; *see also* dkt. 39-6 at 5 ("If a dog bite occurs, a K9 supervisor shall respond to the scene and complete a K9 Supervisory Review Report."); dkt. 39-7 at 6 (completed report).]

As a result of his March 8, 2011 arrest, Mr. White was charged with theft – a class D felony in violation of Indiana Code § 35-43-4-2, and with Resisting Law Enforcement – a misde-

meanor in violation of Indiana Code § 35-44-3-3. [*See* dkt. 39-8 at 2 (charging documents outlining claims against Mr. White).

Three months later, on June 13, 2011, Mr. White was arrested and charged with Criminal Recklessness, and Criminal Mischief, both Class D felonies, in connection with the March 8, 2011 incident. [Dkt. 39-9 at 2.] Following that arrest, Mr. White pled guilty on July 7, 2011, to the Class D felony Theft and the Class A misdemeanor Resisting Law Enforcement charges, and in return, the State agreed to dismiss the other charges pending from his June 2011 arrest. [*See* dkt. 39-10 at 2.]

The City authorizes the use of police canines to apprehend criminal suspects. [*See generally* dkt. 39-5 (establishing that IMPD shall have an on-call canine unit, and outlining its purposes and operating procedures).] "The primary function of a [police service dog] is to be a locating tool; to prevent injury, harm, or potential harm to the K9 officer or other officers or persons, during the commission or attempted commission of any criminal act." [Dkt. 39-12 at 2.] The City also authorizes the use of police canines to "[a]pprehend a fleeing criminal suspect when the K9 officer reasonably believes that probable cause exits [sic] to arrest the suspect for a serious misdemeanor or a felony act" or to "[l]ocate and apprehend hiding suspects when it would be unsafe for officers to proceed into the area." [*Id.* at 2-3.]

All IMPD canine officers must abide by the Canine Unit's Standard Operating Procedures and Section Training Manual. [*See* dkts. 39-12 at 2; dkt. 39-11 at 2.] Police service dogs "and their K9 officers will complete a department-approved Patrol Canine School and/or Narcotics & Explosive Detection School. After completion of such schools, both the K9 and the K9 officer shall maintain the training standards set forth by such schools." [Dkt. 39-12 at 22.] Canine officers and their partners must also conduct a minimum of one shift of proficiency training per

month, and a minimum of eight to twelve hours of basic training per month. [*Id*.] If a canine officer and partner fail to achieve their monthly proficiency certification, that team is not permitted to work until the proficiency training is passed and the training supervisor authorizes the team back to full duty status. [*Id.*]

Officer Novak joined the IMPD Canine Unit in April 2008. [Dkt. 39-11 at 2.] Viky was issued as his police service dog in March 2009, and they attended the department-approved Patrol Canine School in April 2009, which lasted four weeks and included 160 hours of training. [*Id.* at 2-3.] In 2010, Officer Novak and Viky completed 228.5 hours of training together, and successfully obtained their proficiency certifications each month. [*Id.* at 3.] In January 2011, Officer Novak and Viky completed eighteen hours of training and received their proficiency certification. [*Id*.]

## III.
### DISCUSSION

Mr. White filed his Complaint on January 4, 2012, alleging that: (1) Officer Novak's actions deprived Mr. White of constitutionally protected rights and therefore violated 42 U.S.C. § 1983; (2) the City of Indianapolis is vicariously liable to Mr. White under Indiana common law because Officer Novak's tortious actions were conducted within the scope of his employment; and (3) the City is liable to Mr. Novak for negligently hiring, supervising, or retaining Officer Novak. [Dkt. 1-1 at 15-18.] The City subsequently filed a Motion for Partial Summary Judgment on Mr. White's negligence claim. [Dkt. 38.]

### A. Negligence Claim: Negligent Hiring, Supervision, and Retention

To prevail on a negligence claim, "a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004)

(citing *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999). Summary judgment is rarely appropriate in negligence cases, as they are particularly fact sensitive. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). "Nevertheless, a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim." *Haire v. Parker*, 957 N.E.2d 190, 195 (Ind. 2011) (citing *Rhodes*, 805 N.E.2d at 385).

Mr. White asserts that "[t]he City knew or should have known of Officer Novak's propensity towards unlawful and unreasonable utilization of excessive force against subjects," and that the City "failed to take reasonable steps to prevent Officer Novak from utilizing excessive force against . . . [Mr.] White." [Dkt. 1-1 at 17 ¶¶ 24-25.] Based on these allegations, Mr. White avers that the City's negligence caused him personal injuries. [*Id*. at 17, ¶ 26.] As the City notes, although Mr. White does not specifically state it, he contends that the City is liable to him for its allegedly negligent hiring, supervision, or retention of Officer Novak. [Dkt. 38 at 10; *see also* dkt 1-1 at 17.]

    **i.  A Duty Owed by the City to the Mr. White**

Indiana recognizes a cause of action against employers for negligent hiring, supervision, or retention. *Hansen v. Board of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 609 (7th Cir. 2008) (citing *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994)). "Indiana has adopted the Restatement (Second) of Torts § 317 as the standard with regard to this tort, under which a court must determine if the employer exercised reasonable care in hiring, supervising, or retaining an employee." *Hansen*, 551 F.3d at 609 (citing *Konkle v. Henson*, 672 N.E.2d 450, 454-55 (Ind. Ct. App. 1996)).

As the Seventh Circuit acknowledged in *Hansen*, Indiana Courts have applied two standards for holding an employer liable for negligent hiring, retention, and supervision. 551 F.3d at

609. The *Levinson* Court held that to prevail on such a claim "the plaintiff must show that the defendant employer negligently retained an employee who the defendant *knew* was in the habit of misconducting himself." 644 N.E.2d at 1269 (emphasis added); *see also Briggs v. Finley*, 631 N.E.2d 959, 966-67 (Ind. Ct. App. 1994) (holding an employer may be liable for negligent retention "only if he *knows* the employee is in the habit of misconducting himself in a manner dangerous to others" (emphasis added)). Other decisions have held that an employer may be liable for negligent hiring, supervision, or retention "if it merely *should have known* or *had reason to know* of the misconduct." *Hansen*, 551 F.3d at 609-10 (emphasis added) (citing *Grzan v. Charter Hosp. of Nw. Ind.*, 702 N.E.2d 786, 793 (Ind. Ct. App. 1998) (holding that a defendant must have known or had reason to know of the misconduct and failed to take appropriate action); *Konkle*, 672 N.E.2d at 460 (stating that to prevail on a claim of negligent hiring, supervision, and retention, plaintiffs must show that defendants knew or had reason to know of defendant's misconduct and failed to take appropriate action) (citations omitted)). As Indiana does recognize a tort for negligent hiring, supervision or retention, the duty that the City owed to Mr. White was to exercise reasonable care in its hiring, supervising and retaining capacities.

### ii. A Breach of that Duty by the City

For the purposes of this claim, the incongruities between the standards employed by the Indiana Courts need not be addressed. Mr. White has presented no evidence that the City either knew, should have known, or had reason to know that Officer Novak was in "the habit of misconducting himself." *Hansen*, 551 F.3d at 610 (citing *Levinson*, 644 N.E.2d at 1269). Thus, Mr. White failed to satisfy even the less restrictive standard, and it is not necessary to anticipate how the Indiana Supreme Court would resolve the question of whether actual knowledge of misconduct is required to hold an employer liable for negligent hiring, supervision, or retention. *Han-*

*sen*, 551 F.3d at 610 (explaining that if the facts presented do not meet even the lesser standard, there is no need to address the actual knowledge standard because it too would not be satisfied).

In his Complaint, Mr. White baldly asserts that "Officer Novak has a propensity to employ unlawful and unreasonable force in his encounters with his subjects," and that the City "failed to take reasonable steps to prevent Officer Novak from utilizing excessive force . . . ." [Dkt. 1-1 at 15, 17, ¶¶ 5, 24-25.] Mr. White subsequently offers no corroborating evidence to support these statements. Summary judgment requires more than bald assertions regarding the general truth of a matter. *Hadley v. Du Page County*, 715 F.2d 1238, 1243 (7th Cir. 1983). A plaintiff cannot simply rely on the mere allegations of a pleading; he "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)." *Scherer v. Rockwell Int'l Corp.,* 975 F.2d 356, 360 (7th Cir. Ill. 1992).

In its Motion for Partial Summary Judgment, the City argues that Mr. White has presented no evidence showing that: (1) Officer Novak has a propensity to use excessive force; (2) that the City knew or should have known Officer Novak had such a propensity; and (3) that "the City failed to properly train or supervise Officer Novak in the use of canine apprehension." [Dkt. 38 at 10.] By failing to oppose the City's Motion for Partial Summary Judgment, Mr. White has conceded the City's version of the facts. *Lamz*, 321 F.3d at 683.

To support its contention that it was not negligent in hiring, supervising or retaining Officer Novak, the City highlights that Officer Novak has been employed as a police officer by the City of Indianapolis since 2000, has never been disciplined or found to have used excessive force by IMPD or a court, and has received several awards for his service. [Dkts. 39-11 at 2; 38 at 10.] The City stresses that Officer Novak successfully completed the IMPD training academy in

2000, and that he and Viky successfully completed the Patrol Canine School in April of 2009. [Dkts. 38 at 11; 39-11 at 2–3.] The City also points to evidence in the record showing that Officer Novak and Viky completed 246.5 hours of training in 2010, and January 2011, and that they received proficiency certifications each month. [Dkts. 39-7 at 3; 38 at 11.] Lastly, the City emphasizes evidence in the record showing that an IMPD Sergeant, Officer Mauer, was on the scene while Officer Novak and Viky looked for Mr. White, and that Officer Novak, in accordance with IMPD policy, requested a canine supervisor to the scene to complete a report of the incident. [Dkts. 39-4 at 6–7; 39-7 at 3,6; 38 at 11.] Mr. White offers nothing to dispute the City's evidence showing that it exercised reasonable care in supervising and training officer Novak.

In *Hansen*, the Seventh Circuit held there was no issue of material fact regarding whether the defendant negligently hired, supervised or retained its employee because the plaintiff failed to produce evidence that defendant should have known the employee had a habit of misconducting himself. *Hansen*, 551 F.3d at 612.

Similarly, Mr. White has not produced any evidence showing that the City failed to exercise reasonable care in hiring, supervising or retaining Officer Novak. Therefore, Mr. White has failed to establish that the City breached a duty it owed to him – a requisite element for a negligence claim under Indiana common law. *See Peters*, 804 N.E.2d at 738.

### iii. An Injury to Mr. White Proximately Caused by the Breach

Because Mr. White has failed to show the City breached a duty it owed to him, it is unnecessary to discuss whether the alleged breach proximately caused Mr. White's injuries. "[A] defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim." *Haire v. Parker*, 957 N.E.2d 190, 195 (Ind. 2011)

(citing *Rhodes*, 805 N.E.2d at 385). The undisputed material facts negate an essential element of Mr. White's negligence claim, namely that the City breached a duty it owed to Mr. White. Since the second essential element of a Mr. White's negligence claim is negated, the third need not be discussed. Mr. White's injuries could not be caused or proximately caused by a breach that did not occur. Partial summary judgment for the City is proper.

### B. Immunity

As an alternative argument supporting its Motion for Partial Summary Judgment, the City contends it is entitled to immunity and thus could not be held liable even if Mr. White established the requisite elements to make out a prima facie negligence claim. [Dkt. 38 at 11.] Although the Court finds that Mr. White failed to establish a negligence claim, and its analysis could stop there, the Court will briefly discuss the City's immunity argument.

The Indiana Tort Claims Act ("ITCA") immunizes government entities and their officers acting within the scope of their employment from liability for "[t]he performance of a discretionary function." I.C. 34-13-3-3(7). In *Foster v. Pearcy*, the Indiana Supreme Court determined that employment decisions qualify as discretionary matters for purposes of common law qualified immunity. *Foster v. Pearcy*, 270 Ind. 533, 538 (1979) ("Clearly the employment and supervision of deputies and employees in governmental offices . . . is a discretionary function.").

In *Kellogg v. City of Gary*, the Indiana Supreme Court stated "'[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Kellogg v. City of Gary*, 562 N.E.2d 685, 703 (Ind. 1990) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The Court further held that "[a] public official may . . . be held liable if he violated constitutional or statutory rights that were

clearly established at the time he acted such that a reasonably competent official should have then known the rules of law governing his conduct . . . ." *Id.* Indiana Courts have also held that instruction and training of government officers are discretionary functions. *See Lamb v. City of Bloomington*, 741 N.E.2d 436, 441 (Ind. Ct. App. 2001) (holding that it was proper to consider training and instruction of firefighters to be a discretionary function).

No evidence produced has indicated that the City violated a clearly established constitutional or statutory right in its hiring, supervision, or retention of Officer Novak. Because hiring, supervising and retaining a police officer falls under the discretionary function immunity granted by the ITCA, the City is entitled to immunity from Mr. White's negligence claim. Summary judgment is therefore proper on this basis as well.

### IV.
### CONCLUSION

Because Mr. White has failed to establish that the City of Indianapolis breached a duty it owed to him, and therefore failed to establish a prima facie negligence claim, and because any such claim would be barred under the Indiana Tort Claims Act, the Court hereby **GRANTS** the City's Motion for Partial Summary Judgment, and dismisses Mr. White's claim that the City negligently hired, supervised or retained Officer Novak.

04/01/2013

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**
David Ray Thompson
LAW OFFICE OF ROBERT D. KING, JR., P.C.
dthompson@robertkinglaw.com

Robert D. King
LAW OFFICE OF ROBERT D. KING, JR., P.C.
rking@robertkinglaw.com

Alexander Phillip Will
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
awill@indygov.org

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

Beth Ann Garrison
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
beth.garrison@indygov.org

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com